STATE OF NORTH CAROLINA v. PHYLLIS HORNE

No. 8225SC214

(Filed 7 December 1982)

1. **Searches and Seizures § 23— probable cause for search warrant—sufficiency of affidavit**

    An officer's affidavit based upon information reported to him by other officers and by two robbery victims was sufficient to support a finding of probable cause for the issuance of a warrant to search defendant's residence for items taken in the robbery.

2. **Criminal Law § 73.4— statements during robbery—admissibility as part of res gestae**

    In a prosecution of defendant for armed robbery, statements made by one of defendant's companions during the robbery that defendant had hired him and the other companion to do "this job" and they were going "to do it right" and that one of the victims had "ripped off" his girlfriend were admissible as part of the *res gestae* and were relevant to establish the intent of defendant and her companions.

3. **Criminal Law §§ 33.2, 89.6— threats to defendant—competency for rebuttal and to show motive**

    In a prosecution for armed robbery, cross-examination of defendant about threats made to her by her marijuana supplier after marijuana in her possession was allegedly replaced by one robbery victim with moldy marijuana was proper to elicit testimony to rebut defendant's prior testimony that she did not intend to participate in the robbery and to show defendant's motive for the robbery.

4. **Robbery § 5.4— armed robbery case—failure to instruct on lesser offenses**

    The evidence in an armed robbery case concerning the use of a firearm was not conflicting so as to require the trial court to instruct the jury on the lesser included offenses of common law robbery and larceny where defendant admitted that she wielded both a knife and a gun while she was at the victims' residence, and the evidence showed that both of defendant's accomplices in the robbery held guns during the robbery.

5. **Robbery § 6— robbery of husband and wife—two separate robberies**

    Where defendant was charged in separate armed robbery indictments with taking guns and money belonging to the husband and with taking jewelry belonging to the wife, the property was not taken from only one entity so as to constitute only a single offense of armed robbery, and defendant could be convicted and sentenced for two offenses of armed robbery.

6. **Criminal Law § 138— aggravating and mitigating factors—imposition of presumptive sentence**

    There was no merit to defendant's contention that the trial court apparently overlooked evidence of mitigating factors listed in G.S.

15A-1340.4(a)(2) in sentencing her to consecutive terms of 14 years each upon two charges of armed robbery; furthermore, since the court imposed the presumptive sentence specified in G.S. 14-87(d), it was not required to make any findings regarding aggravating and mitigating factors. G.S. 15A-1340.4(b).

APPEAL by defendant from *Sitton, Judge*. Judgment entered 1 October 1981 in Superior Court, CALDWELL County. Heard in the Court of Appeals 22 September 1982.

Defendant was charged in bills of indictment with the armed robberies of Wayne and Donna Vines.

Evidence for the State tends to show that on 13 July 1981 Wayne and Donna Vines and their child were living with Wayne's mother, Mae. In the late afternoon of 13 July, defendant came to the Vineses' house accompanied by William Lawrence and Ronald Hanks. When Mae informed the defendant and the two men that Wayne and Donna were not home, the three indicated they would wait. Approximately twenty minutes later Wayne, Donna, and their child returned to the house. As Wayne walked in, Lawrence hit him on the head with a gun and threatened to shoot him and his family. He demanded both money and guns from Wayne. At this time Hanks was holding a gun to Mae's head. Defendant was holding a hunting knife and a long stick with a knob on one end. When the Vineses' telephone began ringing, Lawrence instructed defendant to cut the cord and to tie Mae with this cord. Lawrence then demanded Donna's jewelry. When she told him her jewelry boxes were in a nearby trailer, Lawrence instructed defendant to accompany Donna to the trailer. After defendant and Donna had obtained the jewelry boxes, defendant informed her that if she and her family did everything they were told, no one would be killed. Defendant, Hanks, and Lawrence then left the house with the property belonging to the Vines family. None of the Vineses saw Lawrence or Hanks threaten defendant in any way. Two days after the alleged robberies, defendant was arrested. A number of the articles taken from Donna and Wayne were found in defendant's residence.

Other evidence presented for the State tends to show that several days prior to the alleged robberies, defendant asked Wayne if he wanted to purchase some marijuana. She then showed Wayne a bag of marijuana. Wayne examined the mari-

juana and noted that it was "low grade leaf." He agreed to buy only one pound. Donna paid for the marijuana by removing $300 from a roll of money containing approximately $2,000. The $300 was removed from the roll in defendant's presence.

Defendant admitted that she sold marijuana to Wayne prior to the alleged robberies. She asserted, however, that the marijuana she intended to sell him was surreptitiously replaced with bags of moldy marijuana by Wayne and Donna. When she returned the moldy marijuana to her supplier, he threatened to harm her unless something was done about the switch. Defendant then discussed the switch with Lawrence and Hanks. The two men agreed to help defendant obtain either money or the marijuana from Wayne. She acquired guns for Hanks and Lawrence after they indicated they might need them when confronting Wayne. Defendant testified that she told the two men she wanted no violence; that she tried to stop Lawrence when he first hit Wayne; and that Lawrence told her he would kill her unless she did as he said.

The jury found defendant guilty on both counts of armed robbery. From an imposition of consecutive sentences of 14 years each, defendant appeals.

*Attorney General Edmisten, by Associate Attorney John W. Lassiter, for the State.*

*Tuttle and Thomas, by Bryce O. Thomas, Jr., for defendant appellant.*

MORRIS, Chief Judge.

[1]   On the first day of trial defendant filed a motion to suppress evidence seized pursuant to a search warrant issued two days after the alleged robberies. In her motion defendant alleged as grounds for suppression that the warrant was void and unconstitutional on its face and that no probable cause was established for its issuance. The trial court denied the motion, and defendant has assigned error. She asserts in her brief that the evidence seized should be suppressed because the warrant was not based on the personal observations of the applicant for the warrant, but was instead based on the observations of the Vineses whose reliability and trustworthiness were not demon-

strated. Defendant further alleges that there was nothing to indicate that the items sought would be found in the place described. We find no merit to this assignment of error.

In his application for the search warrant Detective Richard Matheson attached a detailed list of property sought and specifically described the residence to be searched. Detective Matheson then swore to the following grounds upon which he believed the evidence might be found in the described residence:

> That on July 13, 1981 the residence of Wayne Vines, located at Rt. 10, Box 398; Lenoir, N.C. was broken into and the items listed in the attached list were taken by force. During this occurrence, Mr. Wayne Vines and other occupants of the house were victims of the Assault with Deadly Weapon. A report was filed with the Caldwell County Sheriff's Dept. . . . and the applicant was assigned as the investigating officer. On this same date this applicant interviewed two of the victims, Wayne Vines and his wife, Donna Vines. The Vines advised this applicant that they were both acquainted with one of the perpetrators; same being one Phyllis Stout, aka—Red, and they both have personal knowledge of Stout living in Harmony, N.C. and working in Mocksville, N.C.

> Further, that this applicant contacted Lt. Cotton Edwards of the Mocksville Police Department and was advised that he was familiar with Phyllis Stout and that she did work in Mocksville, N.C.

> Further, that this applicant contacted S. E. Wallace of the Iredell County Sheriff's Department and was advised by Wallace that Phyllis Stout does re(side) at the above described residence.

> That the property described herein was last seen in the possession of Phyllis Stout by the Vines as Stout left their residence on the night of July 13, 1981. Also that approximately $2,500.00 was taken from the Vines residence.

We find that this application for the search warrant clearly satisfies the definition of probable cause as defined by statute and interpreted by our courts. Judge Parker summarized these well-established principles in *State v. Dailey*, 33 N.C. App. 600, 235

S.E. 2d 917, *appeal dismissed and disc. review denied,* 293 N.C. 362, 237 S.E. 2d 849 (1977).

> Probable cause, as that expression is used in the Fourth Amendment and in our statutes, G.S. 15A-244 and 245, "means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender." *State v. Campbell,* 282 N.C. 125, 128-29, 191 S.E. 2d 752, 755 (1972). Probable cause does not deal in certainties but deals rather in probabilities "which are factual and practical considerations of everyday life upon which reasonable and prudent men may act." *State v. Spillars,* 280 N.C. 341, 350, 185 S.E. 2d 881, 887 (1972). Moreover, a valid search warrant may be issued on the basis of an affidavit setting forth information which may not be competent as evidence in a criminal trial. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971). Thus, "[t]he affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant; but the affidavit in such case must contain some of the underlying circumstances from which the affiant's informer concluded that the articles sought were where the informer claimed they were, and some of the underlying circumstances from which the affiant concluded that the informer, whose identity need not be disclosed, was credible and his information reliable." *State v. Campbell, supra* at 129. In this connection, the police officer making the affidavit may do so in reliance upon information reported to him by other officers in the performance of their duties. *United States v. Ventresca,* 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965); *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972); *State v. Vestal, supra; State v. Banks,* 250 N.C. 728, 110 S.E. 2d 322 (1959).

*Id.* at 602, 235 S.E. 2d at 919. In the affidavit before us Detective Matheson relied upon information reported to him by other officers and the named victims of the alleged robberies. We hold that the facts stated in the application support a finding of probable cause.

[2]   Defendant has also assigned error to the admission of "certain inadmissible and prejudicial evidence" and to the non-

admission of "certain proper and significant evidence." Under this assignment of error defendant has noted exceptions to testimony regarding statements made by Lawrence and Hanks during the alleged robberies. The majority of these exceptions refer to Mae Vines' testimony that she heard Lawrence tell defendant that she had hired him and Hanks to do "this job" and they were going "to do it right." Wayne Vines testified that Lawrence hit him and then told him that he had "ripped off" his girlfriend. Defendant alleges that these statements were hearsay and therefore inadmissible. The court allowed the statements of Lawrence into evidence on the basis that they were all made in the presence of defendant and were competent. We find no error in the admission of this evidence. The statements of Lawrence were relevant to the charges of armed robbery, since they appeared to be part of the *res gestae*. To be part of the *res gestae*, a declaration must meet three qualifying conditions: The declaration must be of a spontaneous character, it must be contemporaneous with the transaction at issue or so closely connected as to be practically inseparable, and it must possess some relevancy to the facts sought to be proved. *Coley v. Phillips*, 224 N.C. 618, 31 S.E. 2d 757 (1944). The statements of Lawrence were also relevant to establish the intent of defendant and her cohorts. Intent was directly in issue since the crimes charged require a showing of felonious intent. *See State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978).

This Court also finds no error in the disallowance of two questions posed to defendant. An examination of the record reveals that the court sustained objections to these questions because they were leading. Traditionally the judge's ruling as to the admissibility of leading questions has been reversible only for abuse of discretion. No such abuse was shown here. 1 Brandis on N.C. Evidence § 31 (2d Rev. Ed. 1982).

[3] Defendant has further excepted to questions posed to her on cross-examination concerning threats made to her by her supplier of marijuana after the marijuana was allegedly switched. She argues that these questions constitute impermissible forms of impeachment. The record on appeal shows that this line of questioning was initially opened by defense counsel during his examination of defendant. Furthermore, the questions were admissible to rebut defendant's prior testimony, that she did not intend to participate in the armed robberies. These questions

elicited testimony tending to show defendant's motive for the crimes. A defendant may be asked questions on cross-examination which discredit his testimony, no matter how disparaging the questions. The defendant, however, may not be needlessly badgered by questions which the examiner knows will not elicit competent or relevant evidence. *State v. Daye*, 281 N.C. 592, 189 S.E. 2d 481 (1972). The questions here were relevant to show motive. Defendant's contention, that they were elicited to bring out purely prejudicial matters, is baseless.

We have carefully examined defendant's remaining exceptions to the judge's rulings on the admissibility of evidence and find no prejudicial error.

[4] In Assignment of Error No. 3 defendant excepts to the failure of the trial court to instruct on the offenses of common law robbery and larceny. She argues that the jury could have found from her testimony that there was no evidence to support all of the elements necessary for a conviction of armed robbery. She specifically contends that her testimony shows that she neither used nor threatened use of any firearm. Our examination of defendant's testimony leads us to the opposite conclusion. Defendant admitted that while she was at the Vineses' residence, she wielded both a knife and a gun. When the evidence discloses no conflicting evidence as to the elements of the greater offense, the *lesser included offense need not be submitted. State v. Brown*, 300 N.C. 41, 265 S.E. 2d 191 (1980). We further note that since the State presented evidence of aiding and abetting by defendant, the court properly instructed the jury on the law of aiding and abetting.

> A person aids when, being present at the time and place, he *does some act to render aid to the actual perpetrator of the* crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages, another to commit a crime. (Citation omitted.) By its express terms G.S. 14-87 extends to one who aids and abets in an attempt to commit armed robbery.

*State v. Dowd*, 28 N.C. App. 32, 38, 220 S.E. 2d 393, 397 (1975). Under the law of aiding and abetting, the State was not required to present evidence that defendant personally committed each

State v. Horne

essential element of armed robbery. This assignment of error is overruled.

Defendant has assigned error to the denial of her motions for directed verdict, to set aside the verdict and for new trial. She argues that the evidence failed to prove anything as to her involvement. When ruling on a motion for directed verdict, the trial judge is required to consider the evidence in the light most favorable to the State and to give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Hood*, 294 N.C. 30, 239 S.E. 2d 802 (1978). The State presented considerable evidence that defendant was an aider and abettor to the armed robberies. These motions were properly denied.

[5] Defendant has also assigned error to the court's denial of her motion to dismiss one of the charges of armed robbery. She argues that since the property taken belonged to a husband and wife, it was then taken from "only *one* entity." She cites *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974), as supporting authority. In *Potter* the Court held that the taking of an employer's property from two employees at gunpoint constituted a single offense of armed robbery. We find this case to be inapplicable to the situation here. A more apposite case is *State v. Johnson*, 23 N.C. App. 52, 208 S.E. 2d 206, *cert. denied*, 286 N.C. 339, 210 S.E. 2d 59 (1974). We held therein that the taking of property by threatened use of force from two persons constituted separate and distinct offenses. In the matter before us defendant was charged in separate bills of indictment with the taking of guns and money belonging to Wayne Vines and with the taking of jewelry belonging to Donna Vines. The evidence was consistent with these indictments. This assignment of error is overruled.

[6] Defendant's final assignment of error is directed to the sentence imposed by the court. Defendant argues that when the court sentenced her to consecutive terms of 14 years each, the court apparently overlooked evidence of many of the mitigating factors listed under G.S. 15A-1340.4(a)(2). She further implies that the court punished her for exercising her right to a jury trial. These allegations are based upon sheer speculation. Evidence of both mitigating and aggravating factors was before the court, and we must presume that each of these factors was considered. Moreover, since the court imposed the presumptive sentence

specified in G.S. 14-87(d), it was not required to make any findings regarding aggravating and mitigating factors. *See* G.S. 15A-1340.4(b) and *State v. Morris*, No. 8218SC180 (filed 19 October 1982). This assignment of error is, therefore, overruled.

No error.

Judges BECTON and JOHNSON concur.