IN THE COURT OF APPEALS OF NORTH CAROLINA

2023-NCCOA-4

No. COA22-222

Filed 17 January 2023

New Hanover County, Nos. 15 CRS 50037-50042

STATE OF NORTH CAROLINA

v.

HARRY LEVERT DAVIS

Appeal by defendant from judgments entered 26 March 2021 by Judge Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 29 November 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Teresa M. Postell, for the State.*

*Widenhouse Law, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

TYSON, Judge.

¶ 1   Harry Levert Davis ("Defendant") appeals from judgments entered upon a jury's verdicts finding him guilty of two first-degree murders and of three attempted first-degree murders. Our review of Defendant's arguments shows no error.

## I.   Background

¶ 2   Pamela Pickett, Beverly Pickett, Makayla Pickett, Jasmine Sumpter, Shatara Pickett, and William Pickett lived in a house located at 1901 Lingo Street in

Wilmington ("House"). Makayla and Sumpter were sisters. After their mother passed away in 2012, both moved into the House with their aunt, Pamela. Beverly, Pamela's mother and Makayla and Sumpter's grandmother, moved into the House as well. Makayla and Sumpter's other sister, Deseree, moved in with their other aunt, Tina Pickett, in Raleigh. Deseree spent holidays with her sisters at the House in Wilmington.

¶ 3        Shatara, who is another niece of Pamela, also moved into the House. Shatara's boyfriend, Lamarcus Davis, also occasionally stayed at the House. In 2013, William, Pamela's brother and Makayla and Sumpter's uncle, also moved into the House. William worked a twelve-hour overnight shift from 7:00 p.m. to 7:00 a.m.

¶ 4        In 2014, Pamela was fifty-one years old, suffered from an abnormal heartbeat, and required an oxygen tank to provide supplemental oxygen. Makayla was fourteen years old, diagnosed with autism, and completely blind. Beverly, the mother and grandmother, had been confined to a bed or wheelchair for thirty years due to multiple sclerosis.

¶ 5        Nicole Thrower, a certified nursing assistant, came to the House to assist Beverly several times every day. Thrower and Shatara were friends from high school and had renewed their friendship when Thrower began assisting Beverly. Thrower had also dated Defendant since high school. Thrower would stay and visit with Shatara when she was not working. Shatara's boyfriend, Lamarcus, was also friends

with Defendant. Defendant came to the House to visit Lamarcus and Thrower.

¶ 6        On 7 August 2014 at 7:24 p.m., Defendant broke into the home of Doris Saadeh at 622 Jennings Drive in Wilmington. Doris is the mother of Linda Saadeh, a romantic partner of Defendant. Defendant caused property damage and assaulted Linda. A short time later Defendant was arrested, taken into custody, and transported to the New Hanover County Jail. Defendant's mother posted bond at 11:35 p.m. on 7 August 2014, and Defendant was released.

¶ 7        Early the next morning at 1:06 a.m., Doris called 911 to report her car, parked in front of her home, was on fire. Police officers determined the fire had been intentionally set. Police recovered several items from the scene: a butane disposable lighter, a can of aerosol spray, and balled-up tin foil. Wilmington Police officers located Defendant at a Scotchman convenience store at 1:13 a.m. The drive from 627 Jennings Drive to the Scotchman convenience store located at Third Street and Dawson Street is approximately nine minutes. Doris sought and was granted a protective order against Defendant on behalf of her minor daughter, Linda, on 11 August 2014.

¶ 8        On 30 August 2014, Defendant also assaulted Thrower and was charged. On 8 December 2014, Thrower sought and was granted a protective order against Defendant. She alleged Defendant had been released from jail the night before and was making threats against her.

¶ 9        Defendant attempted to reconcile with Thrower on 22 December 2014. Thrower rebuffed Defendant's advances and asked to stay with Shatara for her own protection. While Shatara and Thrower were driving, Defendant spotted the women and followed the vehicle until Shatara drove to the Wilmington Police Department. Upon arrival, Defendant quit following their vehicle and drove away.

¶ 10       Defendant called Robert Hale at 3:51 a.m. on 23 December 2014 and asked him for a gun. Hale told Defendant he did not have a gun, hung up the phone, and went back to sleep. Defendant purchased a gas container at the Wilmington Scotchman convenience store and filled it with gas at 4:12 a.m. on 23 December 2014. A security video camera recorded Defendant driving away from the Wilmington Scotchman, holding the gas container outside of the driver's window of the vehicle. At 5:04 a.m. that same morning, a 911 call was made reporting the House was on fire.

¶ 11       Wilmington Police Corporal Brandon McInerney was the first to arrive upon the scene at 5:06 a.m. Corporal McInerney was familiar with the residents of the House and had previously responded to medical issues reported at the House. Corporal McInerney observed power lines were down in the front of the House and laying across the road. After exiting his vehicle, Corporal McInerney saw two women attempting to climb out of a window. He rushed to assist them and identified them as Deseree and Jasmine.

¶ 12       Tina, the aunt from Raleigh, had driven and dropped Deseree off at the House

to spend the upcoming Christmas holiday with her sisters, Makayla and Sumpter. After sending Deseree and Jasmine across the road to safety, he turned the corner to the east side of the House and saw a female screaming and unable to get out. He later identified that person as Pamela, hanging halfway out of a side window. Corporal McInerney and Officer Clark helped get Pamela out through the window. Pamela said two more individuals remained inside the House, including one person laying by that window, who had begun to crawl away from the window. Corporal McInerney and Officer Clark leaned inside the window, found Beverly's leg, and pulled her out of the window and passed her to other first responders to get her to safety and receive medical attention.

¶ 13 Pamela struggled to breathe and became unresponsive. First responders began cardiopulmonary resuscitation. Emergency Medical Services officials attempted additional, but unsuccessful, lifesaving procedures. Pamela was pronounced dead at the scene.

¶ 14 Corporal McInerney, who also served as a volunteer firefighter, attempted to look for Makayla inside the House. He reported seeing "heavy smoke, again, coming from every crack. There was a back door, but again with the amount of smoke coming out, I didn't think it was advisable to try to get in through the door."

¶ 15 Wilmington Fire Department had dispatched two firetrucks to the House, but with the live power lines down in the front yard and street, the firemen had to enter

the House without water to locate Makayla. The first vent entry into the House was unsuccessful. Wilmington Fire Department Captain Michael Browning ordered every firefighter to perform another vent entry into the House into all four bedrooms and in the kitchen to find Makayla.

¶ 16          Captain Shannon Provencher used a thermal imaging camera and located Makayla unconscious, wedged between a living room wall and bags of adult diapers. Captain Provencher carried Makayla out to EMS personnel, who were unable to revive her. Makayla was also pronounced dead from smoke inhalation on the scene.

¶ 17          Fire investigators determined two separate fires had been intentionally set at the House. One fire had been set on the front porch, the site of one entrance, and another at the rear entrance. Outside of the House, investigators located a blue butane disposable lighter and a gas can spout. Investigators also located the presence of gasoline in the fire debris.

¶ 18          Defendant was indicted for one count of first-degree arson, two counts of first-degree murder, and three counts of attempted first-degree murder on 30 March 2015. The jury found Defendant guilty of all charges, including both first-degree murders on two bases of malice, premeditation, and deliberation, and also under the felony-murder rule.

¶ 19          Defendant was sentenced to life imprisonment without the possibility of parole for the first-degree murder convictions and 207 to 261 months for each of the

attempted first-degree murders, all sentences to run concurrently. The trial court arrested judgment on the first-degree arson conviction. Defendant appeals.

## II.   Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2021).

## III.   Issues

Defendant argues the trial court: (1) lacked subject matter jurisdiction over the charges of attempted first-degree murder because the indictments did not allege an essential element of the offense; (2) erred by refusing to dismiss the charge of attempted first-degree murder of Deseree Pickett; and, (3) erred by admitting evidence of prior incidents of violence and abuse.

## IV.   Sufficiency of Indictments of Attempted First-Degree Murder

Defendant argues the trial court lacked jurisdiction to enter judgment because his indictments for attempted first-degree murder failed to allege an essential element of the crime. He asserts the indictment failed to include "with malice aforethought."

Defendant failed to challenge the sufficiency of the indictment at trial. It is well established that "when an indictment is alleged to be facially invalid, thereby depriving the trial court of its jurisdiction, it may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court." *State*

*v. Call*, 353 N.C. 400, 429, 545 S.E.2d 190, 208 (2008) (citation omitted). This jurisdictional challenge is properly before us.

## A. Standard of Review

¶ 24 This Court reviews the jurisdictional sufficiency of an indictment *de novo*. *State v. Marshall*, 188 N.C. App. 744, 748, 656 S.E.2d 709, 712 (2008) (citation omitted).

## B. Analysis

¶ 25 The purpose of an indictment is "to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *State v. Creason*, 313 N.C. 122, 130, 326 S.E.2d 24, 29 (1985) (citations omitted).

¶ 26 Under the North Carolina Constitution, an indictment is sufficient to confer jurisdiction if it alleges every element of the offense. *See State v. Greer*, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953). "An indictment need not conform to any technical rules of pleading, but instead, must satisfy both the statutory strictures of N.C.G.S. § 15A-924 and the constitutional purposes which indictments are designed to satisfy[.]" *State v. Oldroyd*, 380 N.C. 613, 617, 2022-NCSC-27, ¶8, 869 S.E.2d 193, 196-97 (2022) (internal citation omitted). "[I]ndictments need only allege the ultimate facts constituting each element of the criminal offense." *State v. Rambert*,

341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995) (citation omitted).

¶ 27        Our Supreme Court has recently held: "[A]n indictment is sufficient if it asserts facts plainly, concisely, and in a non-evidentiary manner which supports each of the elements of the charged crime with the exactitude necessary to allow the defendant to prepare a defense and to protect the defendant from double jeopardy." *Oldroyd*, 380 N.C. at 617-18, 2022-NCSC-27, ¶8, 869 S.E.2d at 197.

¶ 28        Defendant's purported reliance on this Court's decisions in *State v. Wilson*, 236 N.C. App. 472, 474-75, 762 S.E.2d 894, 895-96 (2014); *State v. Bullock*, 154 N.C. App. 234, 243-44, 574 S.E.2d 17, 23 (2002); and *State v. Wilson*, 128 N.C App. 688, 691-92, 497 S.E.2d 416, 419 (1998) is both misplaced and unavailing. Defendant maintains the indictment on its face failed to include the essential element of "malice aforethought," and the judgment must be arrested. *Bullock*, 154 N.C. App. at 244, 574 S.E.2d at 24.

¶ 29        Defendant's indictments for attempted first-degree murder alleged "the defendant named above unlawfully, willfully, and feloniously did ATTEMPT TO KILL AND MURDER [NAMED VICTIM] BY SETTING THE RESIDENCE OCCUPIED BY THE VICTIM ON FIRE." In *Bullock*, the indictment for attempted first-degree murder stated: "[t]he jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above unlawfully, willfully, and feloniously did attempt to kill and murder [victim's name]." *Id.* at 244,

574 S.E.2d at 23. This Court arrested judgment in *Bullock*. This Court also arrested judgment in the separate cases of *Wilson* and *Wilson*, which excluded "malice aforethought." *Wilson*, 236 N.C. App. at 474-75, 762 S.E.2d 895-96; *Wilson*, 128 N.C. App. at 691-92, 497 S.E.2d at 419.

¶ 30 The indictments, Defendant challenges, includes the specific facts from which malice is shown, by "unlawfully, willfully, and feloniously . . . setting the residence occupied by the victim(s) on fire." The indictments allege "the ultimate facts constituting each element of the criminal offense." *Rambert*, 341 N.C. at 176, 459 S.E.2d at 512 (citation omitted). Defendant's argument is overruled.

## V. Attempted First-Degree Murder – Transferred Intent

¶ 31 Defendant argues the trial court erred by denying his motion to dismiss the attempted first-degree murder charge of Deseree Pickett.

### A. Standard of Review

¶ 32 Our Supreme Court has held: "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted).

¶ 33 "In making its determination, the trial court must consider all evidence

admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). "The denial of a motion to dismiss for insufficient evidence is a question of law which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted).

## B. Analysis

Defendant asserts the trial court erred by denying his motion to dismiss the attempted first-degree murder charge of Deseree Pickett. He argues insufficient evidence tends to show a specific intent to kill her because he did not know she would be inside the House.

The elements of attempted first-degree murder are: (1) specific intent to kill another person unlawfully, (2) an overt act calculated to carry out that intent, going beyond mere preparation, (3) the existence of malice, premeditation, and deliberation accompanying the act; and (4) a failure to complete the intended killing. *See State v. Gartlan*, 132 N.C. App. 272, 275, 512 S.E.2d 74, 77 (1999). Defendant argues he was unaware Deseree was present inside the House at the time he set the fires, and he could and did not form the specific intent to attempt to kill her. Defendant's argument is misplaced and ignores long-standing precedents.

The doctrine of transferred intent applies where one engages in an action

against another and unintentionally attempts to or kills a third person. *See State v. Locklear*, 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992). The actor's conduct toward the victim is "interpreted with reference to his intent and conduct towards his adversary[,]" and criminal liability for the third party's death is determined "as [if] the fatal act had caused the death of [the intended victim]." *Id.* (citation and quotation marks omitted).

¶ 37      "[I]t is immaterial whether the defendant intended injury to the person actually harmed; if he in fact acted with the required or elemental intent toward someone[,] that intent suffices as the intent element of the crime charged as a matter of substantive law." *State v. Andrews*, 154 N.C. App. 553, 559, 572 S.E.2d 798, 802 (2002) (citation omitted).

¶ 38      Here, the State's evidence tended to establish Defendant was involved in a domestic dispute with Thrower. Defendant set two fires at both points of natural entry, ingress, and egress in a house, which he believed contained Thrower, his intended victim. Defendant acted with the requisite intent to injure or kill towards a specific person, which intent transferred to another. The true identify of that individual is immaterial. The evidence tends to show and is sufficient for the jury to find Defendant in fact acted, and with the necessary transferred intent to attempt to kill, Deseree. Defendant's argument is without merit and overruled.

## VI.     Prior Acts

¶ 39    Defendant argues the admission of various prior acts of violence and abuse against Linda and Thrower, his setting Linda's mother's vehicle on fire, and attempting to burn Thrower's father's car were improperly admitted over his objections.

## A.  Rules 401 and 402

### 1.  *Standard of Review*

¶ 40    "Although a trial court's rulings on relevancy are not discretionary and we do not review them for an abuse of discretion, we give them great deference on appeal." *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006) (citation omitted), *disc rev. denied*, 361 N.C. 223, 642 S.E.2d 712 (2007).

### 2.  *Analysis*

¶ 41    Defendant argues the admission of this evidence was irrelevant under North Carolina Rules of Evidence 401 and 402.  N.C. Gen. Stat. § 8C-1, Rules 401, 402 (2021).

¶ 42    Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  N.C. Gen. Stat. § 8C-1, Rule 401.  Irrelevant evidence is evidence "having no tendency to prove a fact at issue in the case."  *State v. Hart*, 105 N.C. App. 542, 548, 414 S.E.2d 364, 368 (1992).  Under Rule of Evidence 402, relevant evidence is generally admissible at

trial, while irrelevant evidence is not admissible. *See* N.C. Gen. Stat. § 8C-1, Rule 402.

¶ 43    The challenged testimony was clearly relevant under Rules 401 and 402. This evidence was probative to issues of Defendant's identity, Defendant's common scheme or plan, Defendant's intent, Defendant's motive, Defendant's knowledge, and Defendant's *modus operandi*. The testimony at issue is relevant and admissible under Rules 401 and 402. N.C. Gen. Stat. § 8C-1, Rules 401, 402. Defendant's argument is without merit.

## B. Rule 404(b)

¶ 44    Defendant also challenges the admission of prior bad acts under Rules of Evidence 404(b) and 403.

### 1. *Standard of Review*

¶ 45    "We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

### 2. *Analysis*

¶ 46    Under North Carolina Rules of Evidence 404(b), evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2021). Evidence of prior criminal activity must be: (1) relevant to the crime charged;

and, (2) sufficiently similar and temporally proximate to the crime charged. *State v. Carpenter*, 361 N.C. 382, 388, 646 S.E.2d 105, 110 (2007).

¶ 47    Our Supreme Court has held:

> Rule 404(b) state[s] a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

¶ 48    The State argues the relevant evidence of Defendant's prior actions is properly admitted under Rule 404(b) and tends to show his intent, motive, malice, premeditation, and deliberation. We agree. Defendant's argument is overruled.

## C. Rule 403

### 1. Standard of Review

¶ 49    "Rulings under North Carolina Rule of Evidence 403 are discretionary, and a trial court's decisions on motions made pursuant to Rule 403 are binding on appeal, unless the dissatisfied party shows that the trial court abused its discretion." *State v. Chapman*, 359 N.C. 328, 348, 611 S.E.2d 794, 811 (2005) (citation omitted). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) (citations omitted).

### 2. *Analysis*

¶ 50   Even relevant evidence, under Rule 403 "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2021). Defendant argues the probative value of admitting this evidence is outweighed by the danger of unfair prejudice, because the prior acts are too remote to have probative value and are a needless presentation of cumulative evidence.

¶ 51   "When prior incidents are offered for a proper purpose, the ultimate test of admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect set out in Rule 403." *State v. West*, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991). "[E]very circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) (citation omitted).

¶ 52   The alleged incident where Defendant set Doris Saadeh's car on fire with gasoline occurred approximately five months prior to the incidents on 24 December. The incident where Defendant had threatened to damage Thrower's father's vehicle occurred the same day of the murders and events charged. Defendant's physical assaults of Thrower and Linda also occurred not too temporally remote from the

crimes to warrant exclusion under Rule 403. Defendant has failed to show these incidents are so cumulative or likely to mislead the jury for their admission to constitute an abuse of discretion. *See State v. Stevenson*, 169 N.C. App. 797, 801-02, 611 S.E.2d 206, 210 (2005). Defendant has failed to show the trial court abused its discretion in allowing the admission of testimony regarding Defendant's prior bad actions under Rules 404(b) and 403. His arguments are overruled.

## VII. Conclusion

Defendant's jurisdictional challenges to the sufficiency of his indictments for attempted first-degree murder are without merit. The trial court did not err in refusing to dismiss the charge of attempted first-degree murder of Deseree. Defendant's prior acts were properly admitted under North Carolina Rules of Evidence 401, 402, 403, and 404(b).

Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges CARPENTER and GRIFFIN concur.