STATE OF NORTH CAROLINA v. JOHN D. LOCKLEAR

No. 610A90

(Filed 22 April 1992)

**1. Assault and Battery § 31 (NCI4th) — assault — intent to kill — instruction on transferred intent**

There was no unconstitutional burden shifting in a prosecution for murder and assault where the court instructed the jury on the doctrine of transferred intent as it related to the assault charge. The doctrine of transferred intent does not require or permit one fact to be presumed based upon the finding of another fact, and no presumption of any kind arose here where the trial court merely fulfilled its duty by

STATE v. LOCKLEAR

[331 N.C. 239 (1992)]

explaining the well-established rule of substantive law known as the doctrine of transferred intent.

**Am Jur 2d, Assault and Battery §§ 18, 52; Homicide § 71.**

2. **Homicide § 552 (NCI4th) — murder — no instruction on second degree — no error**

There was no error in a prosecution for first degree murder where the court denied defendant's request to instruct the jury to consider a verdict finding him guilty of the lesser included offense of second degree murder. The only rational verdicts a jury in this case could have returned were guilty of first degree murder on the basis of premeditation and deliberation or not guilty.

**Am Jur 2d, Homicide §§ 525, 526, 530.**

3. **Jury § 7.10 (NCI3d) — murder — jury selection — removal for cause — no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for murder and assault by removing for cause three prospective jurors who knew defendant, defendant's family members, or defendant's co-counsel. Although the conflicting answers given by the three prospective jurors did not establish their bias with unmistakable clarity, there is no doubt the answers they gave could have left the trial court with the quite reasonable impression that they would be unable to faithfully and impartially apply the law.

**Am Jur 2d, Jury §§ 251, 267, 313, 314.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a life sentence for first-degree murder entered on 9 February 1990 by *Hudson, J.*, in Superior Court, SCOTLAND County. The defendant's motion to bypass the Court of Appeals on the appeal of judgment and sentence entered against him for assault with a deadly weapon with intent to kill inflicting serious injury was allowed by the Supreme Court on 3 July 1991. Heard in the Supreme Court on 13 November 1991.

*Lacy H. Thornburg, Attorney General, by John H. Watters, and G. Patrick Murphy, Assistant Attorneys General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant was tried upon proper indictments for the first-degree murder of Geraldine H. Donovan and for assault with a deadly weapon with intent to kill inflicting serious injury on Victoria Kay Donovan. The jury found the defendant guilty of both offenses as charged. At the conclusion of a capital sentencing proceeding, the jury recommended a sentence of life imprisonment be entered for the conviction of murder in the first degree. The trial court, as required by law, imposed a life sentence for that offense pursuant to the jury's recommendation. The trial court also entered a judgment sentencing the defendant to a consecutive term of imprisonment of twenty years for the assault conviction. The defendant appealed his conviction and life sentence for murder to this Court as a matter of right. We allowed the defendant's motion to bypass the Court of Appeals on his appeal of the assault conviction and sentence.

The defendant brings forward three assignments of error. First, he contends that the trial court's instruction on transferred intent with regard to the assault charge denied him due process of law by applying a conclusive presumption. Next, he argues that the trial court erred in failing to instruct the jury on second-degree murder as a lesser-included offense under the indictment against him for the murder of Geraldine Donovan. Finally, he maintains that the trial court erred in removing three prospective jurors for cause due to their relationship with the defendant. We conclude that the defendant's assignments of error are without merit.

The State's evidence tended to show, *inter alia*, that for approximately two years prior to her death on 16 May 1988, Geraldine Donovan had been involved in a relationship with the defendant John D. Locklear. The relationship was described as being "on and off." Geraldine's fifteen-year-old daughter, Vickie Donovan, testified that on 16 May 1988, the relationship between the defendant and her mother could be seen as being "off."

Around 9:00 a.m. on 16 May 1988, the defendant Locklear was seen by his friend Stanton Lewis. Later that afternoon, the defendant came by Lewis' house and asked him if he wanted to ride to the store with the defendant. The two men then headed toward Laurinburg. The defendant's automobile contained clothes on a hanger, a laundry basket with clothes and a shaving kit. On the way towards Laurinburg, the defendant pulled a .25 caliber handgun out of the laundry basket. The defendant stopped at a K-Mart in Laurinburg and purchased a box of .25 caliber ammunition. He asked Lewis to load the gun as they proceeded out of town to Shaw Woods to test-fire the gun. They drove down a path into the woods, where the defendant got out and fired the gun approximately six times.

The defendant drove back to Lewis' house. On the way, Lewis reloaded the gun. They arrived at Lewis' house around 6:00 p.m. As the defendant was leaving, he told Lewis "to take care of myself, that—he might not never [sic] see me again."

The defendant Locklear then went to the Donovan residence, where he arrived at about 6:20 p.m. He entered the house through the side door which opens into the kitchen. He walked past Vickie Donovan in the kitchen and went into the living room where her mother, Geraldine Donovan, was standing. Geraldine and the defendant then went into an adjacent bedroom where Geraldine began putting on make-up and fixing her hair. Vickie went into her bedroom directly across a small hallway.

Moments later Vickie heard her mother yell, "No, John, don't." Vickie went to the door of her room. As she opened it, she heard what sounded like a firecracker going off. When she heard the sound, she stepped back from the door and saw her mother come running into the room with the defendant right behind her holding a handgun. Just before the shots stopped, Vickie peeped over the bed at her mother who was down on her knees in the closet holding the doorknob. Geraldine looked at Vickie, took a breath and fell backwards. Vickie stayed curled up on the floor until the shooting stopped. When the shooting did stop, she looked up and the defendant was gone.

Vickie went into the next room to call the police. As she sat there, she looked up and saw the defendant standing in the doorway reloading the gun. The defendant told Vickie, "Get off the damn phone." Vickie closed the bedroom door in his face.

After closing the door, Vickie proceeded to dial the police. While doing so, she heard more shots coming from her bedroom. She put down the phone and went into her bedroom where she found the defendant standing in front of the closet with the gun pointed at Geraldine Donovan. Vickie pleaded with the defendant, and he stopped shooting and walked out of the house. As Vickie went back to call the police, she noticed blood on her own neck.

At approximately 8:30 p.m., Deputy Benjamin Williams of the Moore County Sheriff's Department answered a call regarding a man acting suspiciously at the Fast Mart in Pine Bluff. Williams found the defendant there and, upon being informed that the defendant was wanted by authorities in Scotland County, transported him to the Moore County Sheriff's Department. While in the defendant's presence, Williams observed that the defendant's speech was not slurred. Although the defendant had the odor of cigarettes and alcohol about him, he did not have any problem communicating with the deputy.

The defendant was returned to Scotland County and processed by Detective Paul Lemmond. During the booking process, the defendant asked the detective, "Is she dead?" Detective Lemmond responded, "Yes, sir."

An autopsy was performed on the body of Geraldine Donovan by Dr. Robert L. Thompson in the presence of Dr. John Butts. During the autopsy, six gunshot entry wounds were located in the victim's body. Two exit wounds were also noted. Four projectiles were recovered from the body. In the opinion of Dr. Butts, Geraldine Donovan died as a result of the six gunshot wounds.

As a result of the defendant's attack upon her on 16 May 1988, Vickie Donovan was treated by Dr. James S. Mitchner for a gunshot wound to her neck. The projectile which struck Vickie entered the back right side of her neck passing through and exiting from the back left side of her neck.

State Bureau of Investigation Agent Steve Carpenter testified as an expert in latent firearms examination and ballistics. From his examination, he concluded that a .25 caliber semi-automatic Raven pistol recovered from the defendant's car fired all of the projectiles linked to the events which had occurred in the Donovan residence.

The defendant did not present any evidence during the guilt-innocence determination phase of the trial.

[1] In his first assignment of error, the defendant contends that the trial court erred in instructing the jury on the doctrine of transferred intent as related to the charge against him for assault with a deadly weapon with intent to kill inflicting serious injury upon Vickie Donovan. He argues that this instruction directed the jury to apply a conclusive presumption against him and, thereby, unconstitutionally shifted the burden of persuasion on the element of specific intent to harm Vickie Donovan to the defendant.

The complained-of instruction occurred when the trial court instructed the jury on the elements of assault with a deadly weapon with the intent to kill inflicting serious injury. The trial court instructed that: "Considering the defendant's intent, the jury is instructed that if the defendant intended to harm one person, but actually harmed a different person, the legal effect would be the same as if he had harmed the intended victim. This is called the doctrine of transferred intent." The defendant recognizes that this instruction was consistent with North Carolina law and conformed with the pattern jury instruction on transferred intent. *See* N.C.P.I.—Crim. 104.13. However, he contends that the challenged instruction amounted to a mandatory conclusive presumption which unconstitutionally relieved the State of its burden of proving each element of the offense charged, denying him due process. We do not agree.

"Elements of criminal offenses present questions of fact which must be resolved by the jury upon the State's proof of their existence beyond a reasonable doubt." *State v. Torain*, 316 N.C. 111, 119, 340 S.E.2d 465, 469, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). The Supreme Court of the United States has stated that the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375 (1970). This principle prohibits the use of evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Francis v. Franklin*, 471 U.S. 307, 313, 85 L. Ed. 2d 344, 352 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39 (1979); *State v. White*, 300 N.C.

494, 507, 268 S.E.2d 481, 489, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). The instruction in the present case did not have the effect of relieving the State of any part of its burden of persuasion on an essential element; instead, it merely stated the substantive law of this state. 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 201 (3d ed. 1988).

In the present case, the trial court merely explained the common law doctrine of transferred intent to the jury. Under that doctrine,

> [i]t is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined. Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary. It has been aptly stated that "The malice or intent follows the bullet."

*State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971) (citations omitted).

The doctrine of transferred intent does not require or permit one fact to be presumed based upon the finding of another fact. Instead, under the doctrine of transferred intent, it is immaterial whether the defendant intended injury to the person actually harmed; if he in fact acted with the required or elemental intent toward someone, that intent suffices as the intent element of the crime charged as a matter of substantive law. *Id.; cf. State v. Swift*, 290 N.C. 383, 407, 226 S.E.2d 652, 669 (1976) (felony murder rule makes premeditation and deliberation immaterial and does not violate due process by establishing a presumption of premeditation and deliberation); 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 215 (3d ed. 1988) (distinguishing presumptions arising upon evidence from matters of substantive law). No presumption of any kind arose here where the trial court merely fulfilled its duty by explaining the well-established rule of substantive law known as the doctrine of transferred intent, as it applied to the assault charged. Therefore, no unconstitutional burden shifting, such as those disapproved in *Francis* and *Sandstrom*, occurred in this case. *Cook v. State*, 255 Ga. 565, 340 S.E.2d 843, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986); *Commonwealth v. Puleio*, 394 Mass. 101, 474 N.E.2d 1078 (1985); *State v. Livingston*, 420

N.W.2d 223 (Minn. App. 1988); *cf. Yates v. Evatt*, 500 U.S. ---, ---, 114 L. Ed. 2d 432, 452 (1991) (discussing the doctrine of transferred intent). This assignment of error is overruled.

[2] By his next assignment of error, the defendant contends that the trial court erred in its instructions on the first-degree murder charge when it denied his request to instruct the jury to consider a verdict finding him guilty of the lesser-included offense of second-degree murder. We find no error in this regard.

We have disavowed any rule that would require the trial court to instruct on second-degree murder as a lesser-included offense in all first-degree murder cases in which the State, as here, relies on the theory that the murder was committed with premeditation and deliberation. *State v. Hickey*, 317 N.C. 457, 346 S.E.2d 646 (1986); *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 646 (1983). To determine whether it should instruct on the lesser-included offense in such cases, the trial court must examine the State's evidence to see if it is "positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged." *Strickland*, 307 N.C. at 284, 298 S.E.2d at 652. "The trial court is required to charge on a lesser-included offense only when there is evidence to support a verdict finding the defendant guilty of such lesser offense." *Hickey*, 317 N.C. at 470, 346 S.E.2d at 655. On the other hand, when all the evidence tends to show the defendant committed the crime charged and did not commit a lesser offense, the trial court is correct in refusing to charge on the lesser-included offense. *Id.*

The State's evidence in this case tended to show that on the day he killed the victim, the defendant purchased ammunition for a .25 caliber handgun and went with his friend Stanton Lewis to some woods to test-fire the gun. Later that day, the defendant went to the Donovan residence where he entered through the side door and went into a bedroom to talk with Geraldine Donovan. Moments later, Vickie Donovan heard her mother yell, "No, John, don't." Vickie heard what sounded like a firecracker going off, and then saw her mother running from the room with the defendant right behind her holding a handgun. After the shots stopped, Vickie went to another room to use the telephone. The defendant followed her and told her to get off the telephone. Vickie got up and closed the door, then began to dial the number for the police department. At that point, she heard more shots coming from her bedroom.

STATE v. LOCKLEAR

[331 N.C. 239 (1992)]

She put the telephone down and went to her bedroom, where she found the defendant still pointing the gun at her mother. She yelled at the defendant and, at that point, he stopped shooting and walked out of the house.

Based on the evidence in this case, the only rational verdicts a jury could have returned were a verdict finding the defendant guilty of first-degree murder on the basis of premeditation and deliberation or, if the jury did not believe the evidence, a verdict finding him not guilty. The trial court properly refused to submit the lesser-included offense of second-degree murder.

[3] By his final assignment of error, the defendant contends that the trial court improperly removed three prospective jurors for cause following *voir dire* examination. We conclude that the trial court committed no error in this regard.

Whether to allow a challenge for cause in jury selection is a decision ordinarily left to the sound discretion of the trial court which will not be reversed on appeal except for abuse of discretion. *State v. Kennedy*, 320 N.C. 20, 28, 357 S.E.2d 359, 364 (1987). The primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict. *Id.* at 26, 357 S.E.2d at 363.

The transcript in the present case reveals that the first juror excused for cause, Roy Yarborough, knew the defendant through Alcoholics Anonymous. He also said that he knew the defendant's mother and father "real well." He indicated that he thought a lot of the defendant's parents and considered the defendant a friend. When asked by the prosecutor if his relationship with the defendant's family would impair his ability to be fair to both sides, Yarborough responded, "Yes, sir." The prosecutor then asked if Yarborough thought that his bias would be substantial enough that he could not be impartial, to which Yarborough replied, "I think so." On rehabilitative questioning by the defendant, Yarborough indicated that he "maybe could" hear the evidence in the case and do what the court instructed him to do.

The State's *voir dire* questioning of the second juror excused for cause, John Hudson, revealed he had been represented by Mr. Horne, co-counsel for the defendant, in two previous legal matters. Hudson considered Horne his lawyer and had confidence in his abilities. Hudson then agreed with the prosecutor's statement that

because he held Horne in such high regard, he could not be fair and impartial to both sides. On rehabilitative questioning by the defendant, Hudson agreed that he could listen to what the court said and could be fair to both the State and the defendant.

The third juror excused for cause, Gregory Pegues, indicated he knew the defendant's sister, Lucille Brock, through his employment. He had known her for five years and considered her a good friend. The defendant's sister attended the entire trial and testified at the sentencing proceeding. The prosecutor questioned Pegues as to whether the fact that he knew Mrs. Brock would prevent him from being fair to both sides in this case. Pegues initially responded, "I don't think so." However, when the prosecutor rephrased the question to ask if the fact the defendant was Lucille's brother would prevent him from being fair to both sides, Pegues said, "I think it might." Pegues then agreed that his friendship with the defendant's sister would not allow him to be fair and impartial in this case. During rehabilitative questioning by the defendant, Pegues stated that he "would want to be" fair to both sides if he sat as a juror.

In *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841 (1985), the Supreme Court of the United States held that a potential juror's bias does not have to be shown with "unmistakable clarity" before a challenge for cause may be granted. The Court stated that great deference should be shown the trial court in these situations because "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Id*. at 426, 83 L. Ed. 2d at 852.

It is true that the conflicting answers given by the three prospective jurors here did not establish their bias with unmistakable clarity. But there is no doubt that the answers they gave could have left the trial court with a quite reasonable impression that they would be "unable to faithfully and impartially apply the law." *Id*. The abuse of discretion standard of review is applied to situations, such as this, which require the exercise of judgment on the part of the trial court. The test for abuse of discretion requires the reviewing court to determine whether a decision " 'is manifestly unsupported by reason,' or 'so arbitrary that it could not have been the result of a reasoned decision.' " *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986) (quoting *White*

*v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) and *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985) ). From the record in the present case, it is clear that the trial court did not abuse its discretion in excusing the three prospective jurors in question for cause under N.C.G.S. § 15A-1212(9).

The defendant received a fair trial free from prejudicial error.

No error.

Justice LAKE did not participate in the consideration or decision of this case.