STATE OF NORTH CAROLINA v. ALGERIO STEFFON CARSON

No. 431A93

(Filed 29 July 1994)

### 1. Homicide § 280 (NCI4th)— first-degree felony murder— firing into occupied vehicle—sufficiency of evidence

The State presented sufficient evidence for the jury to conclude that defendant personally fired the shot that inflicted the fatal wound upon the victim so as to support defendant's conviction of first-degree felony murder based upon the predicate felony of firing into an occupied vehicle, notwithstanding the caliber of the fatal bullet could not be determined and the fatal bullet could not be identified as being among those recovered, where the evidence tended to show that both .25-caliber and .38-caliber bullets were recovered from the truck in which the victim was killed; the jury could find that defendant fired .25-caliber bullets at the truck as it exited the upper level parking lot of an apartment complex and fired .38-caliber bullets into the truck on the lower level parking lot; defendant admitted firing a .38-caliber revolver into the truck at the time the fatal wound was inflicted on the lower level; and defendant was the only person firing into the truck at the time the victim was killed.

**Am Jur 2d, Homicide § 442.**

### 2. Assault and Battery § 31; Homicide § 478 (NCI4th)— aggravated assault—instruction on transferred intent—no unconstitutional presumption

The trial court's instruction on the doctrine of transferred intent as it related to a charge of assault with a deadly weapon with intent to kill inflicting serious injury did not permit the jury to apply an unconstitutional presumption against defendant.

**Am Jur 2d, Assault and Battery § 18; Homicide § 502.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Downs, J., at the 30 November 1992 Criminal Session of Superior Court, Buncombe County, upon jury verdicts of guilty of first-degree felony murder and discharging a firearm into an occupied vehicle. Defendant's motion to bypass the Court of Appeals as to an additional verdict of

**STATE v. CARSON**

[337 N.C. 407 (1994)]

guilty of assault with a deadly weapon with intent to kill was allowed by the Supreme Court on 20 October 1993. Heard in the Supreme Court 11 May 1994.

*Michael F. Easley, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

On 6 July 1992, a Buncombe County grand jury indicted defendant Algerio Steffon Carson for the murder of Walter Samuel Rice and for assault with a deadly weapon with intent to kill inflicting serious injury upon Lois Elaine Wallin. On 3 August 1992, the grand jury also indicted defendant for discharging a firearm into occupied property, a vehicle occupied by Rice and Wallin. Defendant was tried capitally at the 30 November 1992 Criminal Session of Superior Court, Buncombe County. The jury found defendant guilty of first-degree murder under the felony murder rule, guilty of assault with a deadly weapon with intent to kill, and guilty of discharging a firearm into an occupied vehicle. On 11 December 1992, Judge Downs entered judgments sentencing defendant to consecutive terms of life imprisonment for the first-degree murder conviction and five years' imprisonment for the assault conviction. The conviction for discharging a firearm into an occupied vehicle was merged with the first-degree murder conviction; thus, there was no additional sentence imposed for, and defendant does not appeal from, that conviction.

Defendant brings forward two assignments of error. First, he contends the trial judge erred when he denied defendant's motion to dismiss for insufficiency of the evidence because the State failed to prove that defendant personally inflicted the murder victim's fatal wound. Second, he argues that the trial court's jury instruction on the doctrine of transferred intent permitted application of an unconstitutional conclusive presumption in the jury's consideration of the assault charge. We conclude that defendant's assignments of error are without merit.

The evidence taken in the light most favorable to the State showed the following. On 20 December 1991, Terri Roberson; her sister, Lois Wallin; and Wallin's boyfriend, "Sammy" Rice, left Cowboy's Nightlife bar to purchase some cocaine. Roberson drove the threesome to Deaverview Apartments in her black Ford Ranger truck.

STATE v. CARSON

[337 N.C. 407 (1994)]

Deaverview apartment complex is divided into an upper and lower level. Each level has its own separate, noncontiguous entrance, and a footpath connects the upper and lower levels of the complex.

Roberson drove into the upper level of the complex in search of a drug dealer. Roberson and Rice got out of the truck; Wallin remained inside. Roberson told Sharee Lynch that she wanted to buy some cocaine, and Lynch directed her to a man standing nearby. Roberson testified that she had $220.00 in her back pocket. She removed $60.00 from her pocket and told the man to get two or three needles and syringes. The man left to get the syringes.

Roberson testified that the man returned with one syringe and wanted $5.00 for it. Roberson refused to pay the asking price because it was too high. The next thing Roberson knew, she had been hit and knocked to the ground in front of the truck. She discovered that her money was gone and heard gunshots in the lower part of the apartment complex.

Sharee Lynch stated to the police that defendant ran up from the lower level of the complex and shot at Roberson's truck just after the altercation on the upper level. Roberson and Rice jumped into the truck and Roberson drove out of the parking lot. According to Lynch, defendant was still shooting at the truck as Roberson drove out of the upper level parking lot. Lynch heard bullets hitting the side of the truck. She heard defendant shoot six times and then watched him reload the gun.

Roberson drove out of the upper level of the complex and into the parking lot of the lower level. Rice sat on the passenger side of the truck, and Wallin sat in the middle. Roberson parked in front of her brother's apartment. According to Roberson, she left Rice and Wallin waiting in the truck while she went into her brother's apartment to borrow his shotgun. She testified, "I'd been robbed, and I was going to kill somebody, or hurt them." Roberson admitted that she was drunk and "ranting and raving."

While inside her brother's apartment, Roberson heard four or five gunshots outside. Roberson ran outside and opened the driver's door to find her sister slumped over in the driver's seat, with Rice lying on top of her. Both Rice and Wallin had been hit by gunfire. Roberson heard Rice struggling to breathe, and he died soon thereafter.

Wallin testified that while Roberson was in her brother's apartment, two black men, one short and one tall, came down the hill to

the truck. She later identified the short man as defendant and the tall man as Theodis Burgin. She testified that Burgin leaned part of his body inside the passenger window and began hitting Rice in the chest. She and Rice tried to push Burgin out of the window. Wallin stated that Burgin stepped aside, and she saw defendant standing there with a gun. According to Wallin, defendant was the only man with a gun. She recalled that the gun "just went off, bam, bam, bam, bam," and she saw smoke. Rice pushed Wallin over in the seat. Wallin received grazing bullet wounds to her wrist and back. No bullets were recovered from her body.

In his statement to the Asheville Police Department, defendant confessed to firing three shots from a black .38-caliber revolver into the truck in the lower level of the complex:

As far as a robbery, I don't know anything about it, except stories that I have heard about. We were having a party, and I was in the house, and I heard some guns—gunshots. Three people were shooting at the bottom of the hill and two people were standing— were shooting at the top of the hill. I came outside of the apartment I was in, which was Wanda Brown's. I shot two times in the air. I then went back inside and reloaded the two shells I shot.

Someone came inside and said that there was a fight up on the hill. I went up there and I saw Sherri [sic] up there saying, "I need a hit."

We went back down the hill. The truck which I think was a black—I think it was black with a red line and gray on the bottom was parked down across from where the party was. I saw a girl who was white and a dude who was also white inside the truck. They were just sitting inside the truck. A dude named Boo, also known as Theodis Burgin, started hitting the white man in the face a couple of times. We moved out of the way, and I was standing behind him, and I started shooting. I shot three times with a .38 which was black with brown handle. I heard the window bust and the guy said "Stop it," so I stopped shooting. Also think the woman said, "Stop it." There was a bunch of people shooting.

Dr. Richard Landau, the pathologist who performed the autopsy on Rice, testified that Rice received two gunshot wounds. Landau could not determine the order in which the two wounds occurred. Nor could he determine the caliber of the bullets or type of gun that was used to inflict the wounds.

Landau testified that the fatal wound was caused by a bullet that entered Rice's right back area and exited his left shoulder. The bullet followed a right-to-left and slightly upward path, passing through the victim's right lung, vertebral column, aorta, and major vessels in the left lung. Landau concluded that Rice bled to death as a result of this wound. He did not recover the bullet that caused the fatal wound.

The nonfatal wound was caused by a bullet that entered Rice's right upper abdomen at the rib cage but did not penetrate any vital organs. Black pigmentation around the wound led Landau to conclude that this wound was a contact wound, a close wound inflicted four to six inches from the body. Landau removed from Rice's body the bullet responsible for the nonfatal wound and gave it to the Asheville Police Department.

The entrance to the fatal wound measured about 1.0 centimeter, and the entrance to the nonfatal wound measured 1.5 centimeters.

An Asheville Police Department evidence technician recovered bullets from the vehicle in the following locations: one on the driver's floorboard, one from the bottom of the driver's door at the accessory pocket, one from the fabric at the top of the driver's door, three from among the broken glass at the bottom interior of the passenger door, one from the front left tire, and one from the tailgate.

The evidence technician observed broken glass on the seat and floorboard. She observed three bullet holes in the exterior of the passenger door, one below the door handle, and two close to the passenger-side mirror. None of the bullets found in the passenger side door penetrated the passenger compartment. The evidence technician concluded that the bullets found in the interior of the driver's door were fired from the interior of the truck or through the window.

Eugene Bishop, the State's expert in forensic firearms identification, identified the projectiles recovered from the nonfatal wound and from the floorboard as .38-caliber bullets. He determined that these two bullets and the bullet found in the accessory pocket of the driver's door had been fired from the .38-caliber revolver recovered during the investigation of Rice's murder.

Bishop identified two projectiles recovered from the passenger side door as .25-caliber bullets, which could not have been fired by the .38-caliber revolver recovered during the investigation. However, he did determine that the two bullets were fired from the same .25-caliber weapon. Fragments composing the third bullet found inside

the passenger side door had the same land and groove markings as the .25-caliber bullets, but Bishop could not determine their caliber.

Bishop was also unable to determine the caliber of the deformed bullets recovered from the top of the driver's door, front tire, and tailgate. He also noted that bullets lose weight as they penetrate objects.

Additional facts will be presented as necessary for the proper disposition of the issues raised by defendant.

[1] In his first assignment of error, defendant contends that the trial court erroneously denied defendant's motion to dismiss made at the close of all the evidence and after the return of the verdict of guilty of felony murder. Defendant argues that the State's evidence was insufficient as a matter of law to convict him of first-degree felony murder. Defendant acknowledges that the State presented sufficient evidence to support an inference that defendant fired the shot that inflicted the *nonfatal* wound upon Rice. However, he asserts that the State failed to produce substantial evidence that defendant personally fired the shot that inflicted the *fatal* wound upon Rice, a finding necessary to support the jury's verdict of guilt under the court's instructions to the jury. We disagree.

The law concerning challenges to the sufficiency of evidence in criminal trials is well settled. Upon a defendant's motion to dismiss based on insufficiency of the evidence, a trial judge shall " 'determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense.' " *State v. Mlo,* 335 N.C. 353, 368-69, 440 S.E.2d 98, 105 (quoting *State v. Earnhardt,* 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982)), *cert. denied,* —— U.S. —— , 129 L. Ed. 2d 841, 1994 WL 194303 (1994). If both criteria are met, then a trial judge may properly deny a motion to dismiss. *Id.*

"Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Sumpter,* 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986). Evidence is not substantial if it arouses only a suspicion about the facts to be proved, even if the suspicion is strong. *State v. Malloy,* 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983).

Additionally, when considering a motion to dismiss based on insufficiency of evidence,

"[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and

every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion."

*State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

Defendant asserts that the State's evidence was insufficient to show that defendant personally fired the fatal shot or that any of his acts "caused or directly contributed to the death" of Rice. *State v. Luther*, 285 N.C. 570, 573, 206 S.E.2d 238, 240 (1974); *State v. Horner*, 248 N.C. 342, 349, 103 S.E.2d 694, 699 (1958). The evidence presented at trial established that three .38-caliber bullets were recovered: one from the body of Rice, which caused the nonfatal wound; one from the floorboard; and one from the accessory pocket of the driver's door. The firearms expert testified that he did not test the .38-caliber bullets for the presence of blood. He testified when asked that he did not see any foreign material, such as "hair, human dermatitis [sic], or blood," on the bullet found in the floorboard. Defendant contends that there is no proof that any of the three .38-caliber bullets caused the fatal wound. We conclude that there was substantial evidence from which the jury could have reasonably inferred that defendant fired the bullet that killed Rice.

Defendant was convicted of first-degree felony murder based on the predicate felony of firing into an occupied vehicle. "A defendant may properly be found guilty of first-degree felony murder where he knowingly engages in the commission of a dangerous felony and where a killing takes place." *State v. Reese*, 319 N.C. 110, 145, 353 S.E.2d 352, 372 (1987).

Evidence taken in the light most favorable to the State showed that defendant fired at Roberson's truck on two separate occasions. First, according to the testimony of Lynch, defendant fired at the truck as it was exiting the upper level parking lot. Lynch testified that she heard bullets strike the truck. A rational trier of fact could have determined that this activity accounts for the .25-caliber bullets found in the frame of the door and the other fragments that did not penetrate the passenger compartment of the truck. Second, according to the testimony of Wallin and to defendant's own confession, defendant was firing into the truck when Rice's fatal wound was inflicted. Defendant admitted firing a .38-caliber revolver on this second occa-

sion. Thus, a rational trier of fact could have inferred that defendant fired at the truck with a .25-caliber weapon on the upper level and fired into the truck with a .38-caliber weapon on the lower level, reconciling the physical evidence of two different types of bullets found in the truck.

The State presented Wallin's testimony of the events that happened on the lower level indicating that defendant was the only person with a gun and that he fired into the truck several times. Defendant's own confession indicates that he was the only one firing into the truck when Rice was killed and that he was firing a .38-caliber weapon. Roberson stated that she heard four or five shots while she was inside her brother's apartment. The jury could have reasonably inferred that defendant shot the .38-caliber revolver more than three times because two witnesses indicated that at least four shots were fired. From this evidence, the jury could have inferred that one of those bullets caused the fatal wound but was never recovered or that the unidentified deformed bullet found at the top of the driver's door was a .38-caliber bullet and that it inflicted the fatal wound. The jury might also have inferred that the .38-caliber bullet found in the floorboard caused the fatal wound, though it was not tested for the presence of blood and the firearms expert saw no foreign matter on it. Thus, the jury could have easily inferred that defendant personally inflicted the fatal wound.

The State's forensic firearms identification expert testified that bullets lose weight as they penetrate objects. Defendant's confession indicates that he heard glass break as he was shooting. From this evidence, a rational trier of fact could have inferred that the fatal shot lost weight as it passed through glass and into Rice's body, therefore accounting for the difference in size between the fatal and nonfatal entrance wounds. A rational trier of fact could have also reasonably inferred that the nonfatal wound, which was determined to have been fired by defendant's .38-caliber revolver, could have been fired after the fatal wound and thus would not have gone through the glass.

We conclude that the jury could have reasonably concluded that the fatal wound was personally inflicted by defendant as he shot the .38-caliber revolver into the truck.

From this evidence, a rational trier of fact could have determined that during the commission of the felony of firing into the vehicle occupied by Rice and Wallin, defendant fatally shot Rice, proximately causing his death. Thus, this evidence, when viewed in the light

most favorable to the State, sufficiently supports the jury's finding of guilty of first-degree felony murder. Therefore, we affirm the trial court's denial of defendant's motion to dismiss for insufficiency of evidence.

[2] Defendant's second assignment of error is a preservation issue by which he contends the trial court erred in instructing the jury on the doctrine of transferred intent as related to the assault charge. Defendant invites this Court to revisit and set aside its holding in *State v. Locklear*, 331 N.C. 239, 415 S.E.2d 726 (1992) (no presumption of any kind arose where the trial court merely fulfilled its duty by explaining the well-established doctrine of transferred intent as it applied to the assault charged). As this issue has previously been determined contrary to defendant's contention and defendant offers no argument that persuades us to reverse our holding in *Locklear*, we decline to readdress that issue here and find no error.

In summary, we conclude that defendant received a fair trial, free from prejudicial error. Accordingly, we affirm the judgments for first-degree felony murder and for assault with a deadly weapon with intent to kill.

NO ERROR.