STATE OF NORTH CAROLINA v. GLENN HARRISON ANDREWS, Defendant

No. COA01-1305

(Filed 17 December 2002)

**1. Criminal Law— defenses—automatism—unaware of significance of acts**

The trial court did not err in a prosecution for attempted first-degree murder and assault by refusing to instruct the jury on unconsciousness or automatism where defendant's expert testified that defendant's medications could cause a person to act "unknowingly." The doctor was referring to awareness of significance rather than awareness of actions and never testified that defendant was actually unconscious or incapable of controlling his actions at the time of these events.

**2. Criminal Law— transferred intent—attempted murder—running over estranged wife and companion**

The trial court did not err by instructing on transferred intent in a prosecution for attempted murder and assault where defendant ran down his wife with his car in a grocery store parking lot with the specific intent of killing her, injuring her friend in the process.

**3. Homicide; Assault— short-form indictments—constitutional**

Short-form indictments for attempted first-degree murder and assault with a deadly weapon inflicting serious injury were constitutional.

**4. Homicide— attempted murder—transferred intent**

There was sufficient evidence to convict defendant for the attempted first-degree murder of his estranged wife's friend where both the friend and the wife were run down by defendant in a grocery store parking lot; the court properly instructed the

jury on transferred intent; defendant had threatened to kill his estranged wife; he drove his car directly at her; he got out after running them down and stabbed her at least three times, yelling "bitch" each time; and he said "I was trying to get her" after he was subdued by the friend and a bystander.

**5. Homicide— malice—sufficiency of evidence**

Malice toward an attempted murder victim could be inferred from evidence that defendant accelerated his car toward the victim (and defendant's estranged spouse) in a grocery store parking lot.

**6. Homicide— attempted first degree murder—premeditation and deliberation—overt act—sufficiency of evidence**

There was sufficient evidence of both premeditation and deliberation and an overt act in an attempted first-degree murder prosecution where defendant ran down his estranged wife and the victim in a grocery store parking lot and there was no provocation by the victim, defendant had confronted his wife about her relationship with the victim, there was evidence that the same car had been seen driving slowly past the wife as she waited for the victim, and defendant aimed his car at both the wife and victim, accelerated, and knocked both down.

Appeal by defendant from judgments entered on 28 June 2000 by Judge Marlene Hyatt in the Superior Court in Buncombe County. Heard in the Court of Appeals 14 August 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas O. Lawton, III, for the State.*

*David G. Belser, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals judgments entered upon convictions by a jury of two counts of attempted first-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, and one count of violation of a domestic violence protective order. On appeal, defendant contends that the trial court erred in portions of its instructions to the jury, that the short-form indictments used here are unconstitutional, and that the trial court erred in denying defendant's motion to dismiss based on insufficiency of the evidence. For the following reasons, we find no error.

We begin with a summary of the State's evidence at trial. In October 1999, defendant separated from his wife, Kathy Andrews, and their two children, after 12 years of marriage. On 21 October 1999, Ms. Andrews applied for and received a domestic violence protective order directing defendant, among other specifics, to stay away from her residence and workplace, not to contact her, and not to possess a firearm. Ms. Andrews told the judge who issued the order that she was seeking the order "because [defendant] had been threatening to kill me for several months by splattering my brains all over the walls, and that he had threatened murder-suicide several times." Ms. Andrews also informed the judge that defendant had hit her "in the back of the head from behind" on a previous occasion.

At 6:30 p.m. on 10 November 1999, Ms. Andrews dropped her two children off at a Baptist church for a church program. Then she drove to Lake Tomahawk to meet her friend, Brian Evsich. While she waited for Mr. Evsich to arrive, Ms. Andrews observed a car drive slowly by the entrance to the lake. Ms. Andrews further testified that though she could not see the driver's face, she did observe the driver "craning" his neck to look at her. Mr. Evsich arrived at Lake Tomahawk a few minutes later. Ms. Andrews then got in Mr. Evsich's car, they drove together to a local grocery store, and parked the car.

Mr. Evsich and Ms. Andrews began to walk through the parking lot towards the store's entrance. As they were walking, they heard a car engine revving. Ms. Andrews testified that she "turned to look, and the next thing I knew I was coming down onto the hood of the car." Ms. Andrews landed on her back with her head inches away from the grocery store wall. The car struck Mr. Evsich in the left knee and threw him into the air. He landed on the asphalt. Ms. Andrews testified that the car that struck her was the same car she had seen earlier driving slowly by the entrance to the lake.

After the car came to a stop, defendant, who was driving the car, got out and approached Ms. Andrews, who was still lying on the ground. The driver then reached for his waist, withdrew a knife from a case on his belt and began stabbing Ms. Andrews. Defendant stabbed Ms. Andrews three times and with each stab of the knife repeatedly yelled the word "bitch."

Mr. Evsich got up and ran to help Ms. Andrews. Mr. Evsich "hit [defendant] in the head with [his] right knee and knocked [defendant] off of her." Mr. Evsich was able to get on top of defend-

ant and hold him down, while defendant kept asking Mr. Evsich "Who the f— are you?"

Another man at the scene helped Mr. Evsich subdue defendant. While the two men held defendant on the ground and waited for the police, defendant was telling Ms. Andrews that "everything was going to be all right and that he loved her." Another witness testified that defendant, while being subdued, said "Don't worry, I won't try to get away. I did what I wanted to do," and also that "I was trying to get her."

Paramedics took Ms. Andrews to the hospital where she was treated for injuries to her chest, back, and both ankles. Ms. Andrews' doctors performed three separate surgeries including open heart surgery to repair a laceration of the right ventricle of her heart. Ms. Andrews underwent a second surgery to repair two wounds to her left lung as well an artery behind the lung that was lacerated by a stab wound to the back. The third surgery was to repair Ms. Andrews' broken ankles.

Mr. Evsich was also taken to the emergency room, where he was treated for bruised ribs and shoulder blade, a black eye and a broken kneecap. Though Mr. Evsich's injuries were not life threatening, he was discharged with pain medication and given crutches to use while his knee was immobilized. At the time of trial he still had recurring pain in his kneecap.

Defendant called two witnesses. The first was Dr. Don Marsh, a board certified pharmacotherapist. Dr. Marsh testified that on the day of this event, defendant was suffering from a condition known as serotonergic syndrome as a result of simultaneously taking both Effexor and Prozac, two drugs used to treat bipolar disorder, for at least one day prior to 10 November 1999.

Dr. Marsh testified that the symptoms of serotonergic syndrome include inability to concentrate, diarrhea, making poor judgments, not thinking clearly, clumsiness, impaired or slurred speech as well as amnesia, hyperthermia, loss of appetite and dehydration. He explained that serotonergic syndrome "can make a person have what's termed anterograde amnesia; in other words, they go through something, they realize they have done it, and afterwards, they don't realize, again, the weight of their actions." In addition, Dr. Marsh testified that serotonergic syndrome can lead to "making poor judgments and realizing after the fact that these judgments were indeed poor."

**[1]** Defendant first argues that the trial court erred by refusing to instruct the jury on the defense of unconsciousness or automatism. Under the law of this State, unconsciousness or automatism can be a complete defense to a criminal charge, and the burden is on the defendant to establish the defense to the satisfaction of the jury. *State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 363 (1975). In determining whether an instruction on automatism is warranted, "[t]he test . . . is whether the evidence of defendant's mental condition is sufficient to cause a reasonable doubt in the mind of a rational trier of fact as to whether the defendant has the ability to form the necessary specific intent." *State v. Connell*, 127 N.C. App. 685, 692, 493 S.E.2d 292, 296 (1997), *disc. review denied*, 347 N.C. 579, 502 S.E.2d 602 (1998). The trial court is not required to give instructions that are not supported by a reasonable view of the evidence. *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973). According to our Supreme Court, "evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury." *State v. Clark*, 324 N.C. 146, 162, 377 S.E.2d 54, 64 (citations omitted). Indeed, in *Clark* the Supreme Court explained:

> That "such facts and circumstances as raise only a conjecture or suspicion ought not to be allowed to distract the attention of juries from material matters," is particularly pertinent when evidence of defendant's mental condition at the time of the killing is implicated.

*Id.* at 162, 377 S.E.2d at 64 (citations omitted).

Here, defendant requested instructions on both automatism and involuntary intoxication. The trial court gave the latter instruction but declined to instruct on automatism. Defendant argues that the jury could have inferred from Dr. Marsh's testimony that he was not "able to exercise conscious control" of his actions. We disagree.

While the evidence may have supported an inference that defendant's medication for his mental condition impaired his ability to premeditate and deliberate, or to form the specific intent to kill on the night of the attempted murders, it did not support automatism. Dr. Marsh testified that in his opinion defendant suffered from a condition known as serotonergic syndrome caused by taking Effexor and Prozac, two drugs used to treat bipolar disorder, simultaneously for at least one day prior to 10 November 1999. Dr. Marsh based his opinion on his conversation with defendant one week prior to trial along

with a review of defendant's medical and pharmacy records. Although Dr. Marsh described symptoms of serotonergic syndrome, he never testified that defendant was actually unconscious or incapable of controlling his actions at the time of these events. Defendant points to the following excerpt from Dr. Marsh's testimony:

Q: Can [serotonergic syndrome] cause a person to act unknowingly?

A: Yes. It can make a person have what's termed anterograde amnesia; in other words, they go through something, they realize they have done it, and afterwards, they don't realize, again, the weight of their actions.

We do not believe that this general testimony is sufficient to give rise to an inference that defendant's actions were unconscious or automatistic. Although the doctor responded "Yes" to the question of whether the syndrome "can cause a person to act unknowingly," his testimony as a whole reveals that he was not referring to one's awareness or control of actions, but rather to awareness of the significance of the action. Under *Clark*, this evidence is not sufficient to create an inference that this defendant acted unconsciously or was unable to control his actions. For the foregoing reasons, we conclude that the trial court did not err when it refused to give the requested instruction.

[2] Defendant next argues that the trial court gave an improper instruction on transferred intent with regards to the attempted murder of Brian Evsich. Defendant contends that since he intended to harm and did harm Ms. Andrews as well as an unintended victim, the doctrine of transferred intent cannot be used to support the specific intent to harm the unintended victim. We disagree.

While defense counsel does demonstrate that some other jurisdictions might not apply the transferred intent doctrine in this case, our own Supreme Court has ruled that an instruction on transferred intent is appropriate where an unintended victim is harmed. *State v. Locklear*, 331 N.C. 239, 415 S.E.2d 726 (1999); *see also, State v. Christian*, 150 N.C. App. 77, 562 S.E.2d 568 (2002), *disc. review denied*, 356 N.C. 168, 568 S.E.2d 618 (2002).

In *Locklear*, the defendant shot and killed an estranged girlfriend. The woman's daughter, who was present in the apartment at the time of the shooting, was struck in the neck by a bullet. The defendant was convicted of first-degree murder of the woman, and assault with

intent to kill inflicting serious injury on the daughter. Discussing an instruction on transferred intent very similar to the one here, the Court in *Locklear* noted that "[t]he instruction . . . did not have the effect of relieving the State of any part of its burden of persuasion on an essential element; instead, it merely stated the substantive law of this state." *Locklear* at 245, 415 S.E.2d at 729.

Here, as in *Locklear*, the trial court simply explained the common law doctrine of transferred intent to the jury. "[U]nder the doctrine of transferred intent, it is immaterial whether the defendant intended injury to the person actually harmed; if he in fact acted with the required or elemental intent toward someone, that intent suffices as the intent element of the crime charged as a matter of substantive law." *Id.* at 245, 415 S.E.2d at 730. Likewise, it is immaterial whether the intended victim is harmed or not.

Clearly, defendant intended to harm his estranged wife and did so when he ran her down with his car in a grocery store parking lot, and then got out of the car and stabbed her several times in the chest. Witnesses at the scene recounted defendant's statements at the time, including "I was trying to get her." Defendant also injured Mr. Evsich, by hitting him with the car. Because defendant acted with the specific intent to kill Ms. Andrews, evidence of that intent could properly serve as the basis of the intent element of the offense against Mr. Evsich.[1] The court did not err in so instructing the jury.

**[3]** Defendant next contends that the short-form indictments for attempted first-degree murder and assault with a deadly weapon inflicting serious injury do not adequately confer jurisdiction and are constitutionally insufficient under *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000). Neither of the indictments for attempted first-degree murder alleged premeditation and deliberation, and neither of the assault indictments alleged specific intent to kill.

Our Supreme Court has passed on this issue several times and has consistently held that the short-form indictments are "in compliance with both the North Carolina and United States Constitutions." *State v. Braxton*, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000), *cert. denied* 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *see also, State v. Lytch*, 142

---

1. We will summarize evidence of defendant's intent more completely in the discussion of the sufficiency of the evidence to support these convictions later in this opinion.

N.C. App. 576, 579-80, 544 S.E.2d 570, 572 (2001), *affirmed*, 355 N.C.270, 559 S.E.2d 547 (2002). We are bound by the decisions of our Supreme Court and thus overrule this assignment of error.

Finally, defendant argues that there was insufficient evidence to convict him of attempted first-degree murder of Brian Evsich and Kathy Andrews. Defendant does not articulate a basis for his argument as pertaining to Kathy Andrews; thus we consider that assignment of error abandoned. This discussion will address only the argument pertaining to the charge of attempted murder of Brian Evsich.

In ruling on a defendant's motion to dismiss, "the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The issue of whether the evidence presented constitutes substantial evidence is a question of law for the court. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."*Id.* at 66, 296 S.E.2d at 652; *see also, State v. Mercer*, 317 N.C. 87, 343 S.E.2d 885 (1986). Our Courts have repeatedly noted that "[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . . ." *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) (citations omitted); *see also, State v. Patterson*, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585-86 (1994). "If all the evidence, taken together and viewed in the light most favorable to the State, amounts to substantial evidence of each and every element of the offense and of defendant's being the perpetrator of such offense, a motion to dismiss is properly denied." *Mercer* at 98, 343 S.E.2d at 892 (citations omitted).

The elements of an attempt to commit any crime are: (1) the intent to commit the substantive offense, and(2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense. *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996). Specifically, this Court has stated that:

> a person commits the crime of attempted first-degree murder if: (1) he or she intends to kill another person unlawfully and (2) acting with malice, premeditation, and deliberation does an overt act

calculated to carry out that intent, which goes beyond mere preparation, but falls short of committing murder.

*State v. Gartlan,* 132 N.C. App. 272, 275, 512 S.E.2d 74, 77 (1999), *disc. review denied,* 350 N.C. 597, 537 S.E.2d 485 (1999).

The overt act required for an attempted crime must be more than preparation in that it "reach[es] far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." *State v. Price,* 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971). Premeditation is present where the defendant formed a specific intent to kill the victim some period of time, no matter how short, prior to perpetrating the actual act. *State v. Gainey,* 343 N.C. 79, 82-3, 468 S.E.2d 227, 229 (1996). Deliberation is acting is a cool state of blood and not under the influence of a violent passion. *Id.* at 83, 468 S.E.2d at 229-30. In *State v. Myers,* our Supreme Court held that in the context of attempted first-degree murder, circumstances that may tend to prove premeditation and deliberation include: (1) lack of provocation by the intended victim or victims; (2) conduct and statements of the defendant both before and after the attempted killing; (3) threats made against the intended victim or victims by the defendant; and (4) ill will or previous difficulty between the defendant and the intended victim or victims. *State v. Myers,* 299 N.C. 671, 677-78, 263 S.E.2d 768, 773 (1980).

**[4]** As to the attempted first-degree murder of Brian Evsich, defendant again argues that the jury instruction on transferred intent was erroneous and without such an instruction the evidence was insufficient to convict defendant on this count. Defendant contends that, as to Mr. Evsich, there is insufficient evidence of premeditation, deliberation or specific intent to kill Mr. Evsich or even of any "threats or ill will," and that defendant did not even know Mr. Evsich. Since we have already determined that the court properly instructed on transferred intent, we review in more detail the evidence of intent to kill Ms. Andrews in order to determine what intent could have transferred.

As to Kathy Andrews, the State produced evidence which showed that defendant had recently separated from Ms. Andrews, his estranged wife; that he had previously threatened to kill her and previously threatened murder-suicide; that he drove his car directly at Ms. Andrews and hit her in a grocery store parking lot; that after he ran her down with the car, he got out of the car and stabbed her at least three times, repeatedly yelling the word "bitch" with every stab

of the knife; and that after he was subdued he stated "I did what I wanted to do" and "I was trying to get her." This evidence was sufficient to give rise to the inference that defendant had the specific intent to kill Ms. Andrews and that he acted to carry out that intent. The same evidence gives rise to inferences of premeditation and deliberation.

**[5]** Defendant also argues that there was no evidence of malice toward Mr. Evsich. The evidence, in a light most favorable to the State, does not support this argument.

Malice can be inferred where a defendant intentionally assaults another person with a deadly weapon. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). An automobile driven in a reckless or dangerous manner can be a deadly weapon. *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). Thus, defendant's malice towards Mr. Evsich can be inferred from the evidence that defendant accelerated his car toward Mr. Evsich and struck him in a grocery store parking lot.

**[6]** In applying the *Myers* factors to this case, defendant's premeditation and deliberation can be inferred from the lack of provocation by Mr. Evsich; the evidence that defendant previously confronted Ms. Andrews about her relationship with Mr. Evsich; the evidence that the same car that hit Mr. Evsich was seen driving slowly past Ms. Andrews as she waited at the lake; and from the evidence that defendant aimed his car at Ms. Andrews and Mr. Evsich, accelerated and knocked them both down.

Finally, this evidence was sufficient to establish an overt act by defendant, beyond mere preparation, in furtherance of his intent to kill. Therefore, the trial court properly denied defendant's motion to dismiss the attempted first-degree murder charges.

No error.

Judges WYNN and CAMPBELL concur.